AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Precision Location Information; Subscriber & Transactional Records; Cell Site Information; Pen Register & Trap-and-Trace for Phone # 314-502-3888

Case No.  4:20 MJ 5070 NAB

**FILED**
MAR 24 2020
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____ District of ___NEW JERSEY___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☐ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21:841 and 846 | possess with the intent to distribute controlled substances and conspiracy; conspiracy to possess |
| 18:924(o) | a firearm in furtherance of a drug trafficking crime and |
| 18:924(j)(1) | conspiracy to possess a firearm in furtherance of a drug trafficking crime resulting in death |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Rodney Jones, TFO, USMS
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: 3/24/2020

City and state: St. Louis, Missouri

*Judge's signature*

Honorable Magistrate Judge Nannette A. Baker
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION ) <br> OF THE UNITED STATES OF AMERICA ) <br> FOR A WARRANT TO OBTAIN ) <br> LOCATION INFORMATION, INCLUDING ) <br> PRECISION LOCATION INFORMATION; ) <br> SUBSCRIBER AND TRANSACTIONAL ) <br> RECORDS; CELL SITE INFORMATION; ) <br> AND FOR A PEN REGISTER AND TRAP <br> AND TRACE DEVICES FOR PHONE <br> NUMBER 314-502-3888 | No.  4:20 MJ 5070 NAB <br><br> **FILED UNDER SEAL** |

## AFFIDAVIT

I, Rodney Jones, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a warrant and order pursuant to Rule 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information associated with a cellular telephone **314-502-3888** (hereinafter referred to as the "subject cellular telephone") to require VERIZON WIRELESS (hereinafter "the Provider"), and/or any service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, to disclose to the United States location information, including precision location information, transactional and subscriber data and cell site location information, and the installation and use of other pen register and trap and trace devices associated with the subject cellular telephone, as described in Attachment B to the requested warrant and order.

2.     I am a Task Force Officer (TFO) with the United States Marshal Service, (USMS), and have been since 2017.  I am currently employed as a sworn police officer with St. Charles

1

County Police Department and have been since 2008. I am charged with enforcing all laws in the all jurisdictions of the United States, its territories and possessions. My current duty assignment is in the Eastern District of Missouri. My primary duty and assignment obligates me to investigate, locate and apprehend state and federal fugitives.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. The present affidavit is being submitted in connection with an application of the United States for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the subject cellular telephone.

5. The USMS AND/OR OTHER LAW ENFORCEMENT AGENCY has probable cause to believe that the subject cellular telephone is currently being used by JERELL HENDERSON who is avoiding apprehension and prosecution in connection with an arrest warrant issued by the U.S. District Court for the Eastern District of Missouri in Cause No. 4:19 CR 755 HEA PLC on September 19, 2019, for drug conspiracy; firearms conspiracy and discharge of a firearm in furtherance of a drug trafficking crime resulting in death, by Jerell Henderson whose whereabouts are currently unknown.

## **BACKGROUND CONCERNING WIRELESS PROVIDERS**

6. Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

   a. Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

   b. Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received. For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact. Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

   c. Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

3

d. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

e. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates

4

and times of payments and the means and source of payment (including any credit card or bank account number).

   f.  Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as precision location information or PLI data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

   g.  In order to locate the subject cellular telephone and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the United States. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Provider, any telecommunication service providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap and trace data.

## INVESTIGATION AND PROBABLE CAUSE

7.    The United States, including USMS has probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting JERELL HENDERSON who is a "person to be arrested".

8.    On September 19, 2019, the U.S. District Court for the Eastern District of Missouri issued a federal arrest warrant in Cause No. 4:19 CR 755 HEA PLC for Jerell Henderson (B/M, DOB-07/16/1990, SS#491048191).

9.    On September 22, 2019, officers with the St. Louis Metropolitan Police Department Intelligence Division and acting as Task Force Officers began a fugitive investigation into locating and apprehending Jerell Henderson. These officers identified various locations potentially affiliated with Henderson but failed to observe, locate or apprehend him. While conducting the fugitive investigation, an account was located through Facebook Inc. and Facebook Messenger account of "Boogalou Henderson" with pictures of Jerell Henderson posted on the social media page. Agents positively identified Jerell Henderson through those pictures on the social media page. The "Boogalou Henderson" account is located under the I.D. # /jace.v.boogie. Agents also observed his Facebook Messenger account under I.D.#/ messages/t/jace.v.boogie. After numerous arrest attempts, officers observed Henderson's social media page removed from Facebook on October 14, 2019. His Facebook Messenger account I.D. #/ messages/t/jace.v.boogie remained active.

10.    On or about October 25, 2019, an Order for a Pen Register and Trap and Trace Devices was issued by this Court in Case Number 4:19 MC 826 DDN. The United States Bureau of Alcohol, Tobacco, Firearms and Explosives was unable to utilize the Order in a manner that generated meaningful information. That Order expired on or about December 20, 2019. As a

6

result, a request was made for the United States Marshals Service (USMS) to take the lead in Henderson's apprehension.

11. On or about January 14, 2020, USMS TFO Rodney Jones initiated an investigation into Henderson. Among other things, USMS TFO Jones confirmed that the Facebook account https://www.facebook.com/jace.v.boogie was again active. Additional Facebook searches of Henderson and other known family members and associates again located the Facebook page with the name of "Boogalou Henderson" that contained photographs of Henderson. (USMS TFO Jones conducted a side-by-side comparison of the photographs on the Facebook account and recent mugshot photographs of Henderson to verify that Henderson was the same person in the photograph(s) on the Facebook account.) Henderson's account remains set to private, but the profile picture is, in fact, a photograph of Henderson.

12. On January 24, 2020, an Order for a Pen Register and Trap and Trace Devices was issued by this Court in Case Number 4:20 MJ 41 SPM (Order). Pursuant to the Order, the USMS began receiving information from Facebook concerning Internet Protocol ('IP') address(es) used to access the Facebook page with the name of "Boogalou Henderson" (TARGET PAGE). On the following dates and times the following IP(s) were used to access the TARGET PAGE:

- a) 01/21/2020 10:57:28 UTC: 174.255.3.120
- b) 01/19/2020 11:28:29 UTC: 174.255.6.74
- c) 01/18/2020 21:19:23 UTC: 174.255.4.250
- d) 01/17/2020 08:14:36 UTC: 174.255.3.213
- e) 01/17/2020 01:16:55 UTC: 174.255.17.19
- f) 01/16/2020 12:49:51 UTC: 174.255.17.196
- g) 01/03/2020 10:35:01 UTC: 174.255.4.119

7

13.     These IP addresses are assigned to Verizon and are in the "old" IP version 4 (as opposed to the new IP version 6) format. With IP version 4, wireless providers may assign many subscribers to the same address at a given time. Pursuant to the Order, the USMS received a list of all telephone numbers assigned to the above IP addresses at the above dates and times. The following telephone number appeared on six of the seven listed: 314-502-3888. (*Investigator's Note*: There is only one other phone numbers in common between two or more of the above IP addresses. It appears only twice and is believed to be due to chance.)

14.     As such, the telephone number 314-502-3888 was used to access the TARGET PAGE at least six times. While subscriber information for that number does not identify a specific individual, it is the belief of the investigative team that Jerrell Henderson is utilizing number 314-502-3888 to access the TARGET PAGE based upon, among other things, the frequency of access and the fact that access is being made to the TARGET PAGE.

15.     Furthermore, the investigation has determined that the Verizon IP Version 6 address of 2600:1014:d125:6e3f:a816:7b35:42f6:c610 was used to access the TARGET PAGE on March 7, 2020, at 03:32:04 UTC. It is my understanding that Verizon assigns a single specific IP Version 6 address to each Verizon device and only Verizon can identify the specific device. Verizon has identified the mobile telephone number associated with the above-referenced address used to access the TARGET PAGE on March 7, 2020, to be 314-502-3888.

16.     Similarly, through training and experience, as well as information provided by agents and/or law enforcement officers assigned to the investigation, friends, family members and associates communicate in all manners to include use of a mobile telephone. Subjects of criminal investigations maintain close and continued contact with said individuals to continue their criminal activity and/or further their flight from justice. Such communications include, but are not limited

8

to, arranging food, shelter, and transportation; conspiring with confederates; conducting transactions with financial institutions. Therefore, it is reasonable to believe that Henderson is also utilizing number 314-502-3888 to continue his evasion of apprehension by law enforcement.

17. As a result, the requested records related to number 314-502-3888 will likely assist members of the USMS and investigative team in identifying Henderson's location and apprehending him pursuant to the existing federal arrest warrant.

18. As previously noted, officers have made attempts to locate and arrest fugitive subject Jerell Henderson, but they have been to no avail. Due to his active federal warrant it is imminent to locate and apprehend fugitive subject Henderson through all law enforcement techniques. The information sought by this application will likely directly assist in apprehension. Transactional records and information such as those identified in Attachment B to the proposed Order will assist the investigative agency(ies) further their investigation

## CONCLUSION

19. Based on the above information, there is probable cause to believe that the subject cellular telephone is being used by JERELL HENDERSON, who is avoiding apprehension and prosecution in connection with an arrest warrant issued by the U.S. District Court for the Eastern District of Missouri in Cause No. 4:19 CR 755 HEA PLC on September 19, 2019, for drug conspiracy; firearms conspiracy and discharge of a firearm in furtherance of a drug trafficking crime resulting in death, by Jerell Henderson and others.

20. None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated

9

is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

21. The monitoring of the location of the subject cellular telephone by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

**I state under the penalty of perjury that the foregoing is true and correct.**

3/24/2020
DATE

RODNEY JONES
Task Force Officer
USMS
314-502-3710
Rjones@usms.doj.gov

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41, this 24th day of March, 2020.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

# ATTACHMENT A

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) & B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a Warrant and Order requiring a telecommunications service provider reflected in Part II of this Attachment A, to disclose the records and other information concerning the account described in Part I of this Attachment A.

## I.   The Account(s)

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---|---|---|---|
| Verizon Wireless | 314-502-3888 (the subject cellular telephone) | | JERELL HENDERSON |

## II.   The Provider

Records and information associated with the subject cellular telephone that is within the possession, custody, or control of **VERIZON WIRELESS** and other applicable service providers reflected on the list contained in this Attachment A, including information about the location of the subject cellular telephone if it is subsequently assigned a different call number.

1

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, d/b/a Verizon Wireless | Illinois Valley Cellular | PacWest Telecom | US West Communications |
| | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River Communications | RCN Telecom | Westlink Communications |
| Commercial Communications | | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone Company | QWEST Communications | Windstream Communications |
| Cox Communications | | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications [1] |
| | Metro Teleconnect | | |

---

[1] Last Update: 09/27/2019

2

## ATTACHMENT B

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

### I. PRECISION LOCATION INFORMATION

#### A. Information to be Disclosed by the Provider

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from March 24, 2020 to May 7, 2020 - 45 days later (counting the date the Judge signed as Day #1), 11:59 p.m. (CT) during all times of day and night, regarding the location of the subject cellular telephone described in Attachment A.

"Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agency(ies).

#### B. Information to Be Seized by the United States

All information described above in Part I, Section A that will assist in arresting **JERELL HENDERSON** who is avoiding prosecution and prosecution in connection with an arrest warrant issued by the U.S. District Court for the Eastern District of Missouri in Cause No. 4:19 CR 755

1

HEA PLC on September 19, 2019, for drug conspiracy; firearms conspiracy and discharge of a firearm in furtherance of a drug trafficking crime resulting in death, by Jerell Henderson and others.

## II.   CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA

For the subject cellular telephone identified in Attachment A, the following telecommunication records and information, but not the contents of any communication for the **past ninety (90) days** from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

**Information to be Disclosed by the Provider**

1. All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2. Length of service;

3. All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI") numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, and primary long-distance carrier;

4. Subscriber information available for any originating telephone number;

2

5.  Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the subject cellular telephone) for the above-specified time period;

6.  Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone;

7.  Cellular telephone records and information pertaining to the following, for the above-specified time period:

    (a)  call detail information (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

    (b)  cell site activation information, including information identifying the antenna tower receiving transmissions from the subject cellular telephone number, and any information on what portion of that tower is receiving a transmission from the subject cellular telephone number, at the beginning and end of a particular telephone call made to or received by the subject cellular telephone number;

    (c)  numbers dialed;

    (d)  call duration;

    (e)  incoming numbers if identified;

    (f)  signaling information pertaining to that number;

    (g)  a listing of all control channels and their corresponding cell sites;

3

    (h)  an engineering map showing all cell site tower locations, sectors and orientations;

    (i)  subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the subject cellular telephone;

    (j)  historical location estimates, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD); and,

    (k)  Internet Protocol (IP addresses) utilized by and signaled to and from the subject cellular telephone.

## III.  PEN REGISTERS AND TRAP AND TRACE DEVICES

For the subject cellular telephone identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1. Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agency(ies) and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the subject cellular telephone number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the subject cellular telephone described in Attachment A., including the

4

date, time, and duration of the communication, and the following, without geographic limit, including:

   a. IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

   b. Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

   c. IP addresses of any websites or other servers to which the subject cellular telephone connected;

   d. Source and destination telephone numbers and email addresses;

   e. "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2. The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the subject cellular telephone identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers

3. The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to

5

accomplish the installation and use of the pen register and trap and trace devices, including enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4. The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the results of the pen register and trap and trace devices, including enhanced caller identification, at reasonable intervals for the duration of this Warrant and Order.

5. Should the subject cellular telephone identified in Attachment A and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of this Order, the request for pen register and trap and trace devices, including enhanced caller identification, shall remain in effect for any new telephone to which the subject cellular telephone listed above is changed throughout the effective period of these Warrants and Orders.

6. The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall be provided compensation by the lead investigative agency for reasonable expenses incurred in providing technical assistance.

7. Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider, and the service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall not disclose the existence of this application and/or any warrant or order issued upon this application, or the

existence of the investigation, for a period of one year from the date of this Order to a subscriber or lessee or to any other person, except that the provider may disclose the warrant to an attorney for the provider for the purpose of receiving legal advice.

8.     This Warrant and Order does not authorize interception of any communications as defined in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling information, including cell site information, precision location information, including GPS information, related to the subject cellular telephone.

9.     The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the subject cellular telephone by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.